**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **OCTOBER ROBB,**<br>as Parent, Guardian of Property, and Next Friend of S.R., A Minor<br><br>Plaintiff,<br><br>v.<br><br>**CHARLES COUNTY BOARD OF EDUCATION,**<br><br>Defendant. | **Case No. 8:24-cv-02212-TJS** |

**MEMORANDUM OPINION**

Pending before this Court[1] is "Defendant's Motion for Summary Judgment" ("Motion") filed by the Charles County Board of Education ("Defendant" or the "Board"). ECF No. 41. Plaintiff, October Robb, as Parent, Guardian of Property, and Next Friend of S.R., a Minor ("Ms. Robb" or "Plaintiff") has filed "Plaintiff's Opposition to Defendant's Motion for Summary Judgment & Cross-Motion for Summary Judgment" and an amended version[2] of this same filing ("Opposition" and "Cross-motion")[3]. ECF Nos. 42 & 44. Defendant filed a "Reply and Opposition to Cross Motion for Summary Judgment" ("Reply") in response to Plaintiff's Opposition. ECF

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me conduct all further proceedings in this case, including trial, entry of final judgment, and resolution of post-judgment proceedings. ECF Nos. 18 & 19. This case was previously assigned to the Honorable Gina L. Simms. It was reassigned to me on August 19, 2026.
[2] The "Plaintiff's Amended Opposition to Defendant's Motion for Summary Judgment & Cross-Motion for Summary Judgment" (ECF No. 44) only includes corrections to citations of the record and otherwise does not make any substantive changes.
[3] Plaintiff's Cross-motion for Summary Judgment does not flesh out distinct arguments from its Opposition to Defendant's Motion; therefore, the Court will focus on Defendant's Motion as the operative motion for summary judgment.

No. 43. Plaintiff filed a "Response to Defendant's Reply and Opposition to Plaintiff's Cross Motion for Summary Judgment" ("Sur-reply"). ECF No. 45. Accordingly, briefing on the issues is complete. The Court finds that no hearing is necessary. *See* Loc. R. 105.6.

For the reasons set forth below, Defendant's Motion is **GRANTED** and Plaintiff's Cross-Motion is **DENIED**. Summary judgment will be entered in favor of Defendant.

## I. INTRODUCTION

### A. Procedural Background

Plaintiff originally filed suit against Defendant in the Circuit Court for Charles County, Maryland. *See* ECF No. 4. Defendant timely removed the case to this Court on July 30, 2024. ECF No. 1. Plaintiff advances the following claims: Count I for negligence, Count II for *respondeat superior*, and Count III for sexual harassment and sex discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688. ECF No. 4. The Court entered a scheduling order, and the parties have completed discovery. ECF Nos. 14, 15, 22, 24, & 33. Subsequently, the Court set briefing deadlines for pretrial motions and Defendant filed its motion for summary judgment. ECF Nos. 40 & 41.

### B. Factual Background[4]

Unless otherwise noted, the following facts are not in dispute. Because the Court is considering cross-motions for summary judgment, it "consider[s] each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defenders of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond*, 475 F.3d 633, 638 (4th Cir. 2007)). All factual disputes and any competing,

[4] Judge Simms ordered the parties to submit a singular Joint Appendix ("JA"). ECF No. 46. Defendant's submissions can be found in this range: JA 0001 to 0111. Plaintiff's submissions are found at JA 0112 to 0172.

rational inferences are construed in the light most favorable to the party opposing the motion. *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 291 (4th Cir. 2021). Here, to the extent any facts are in dispute, they will be considered in the light most favorable to Plaintiff. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).

On February 9, 2024, S.R., then a third-grade student at Eva Turner Elementary School ("Eva Turner") in Waldorf, Maryland, was touched over his clothing near his private area by another third-grade student (she will be referred to as "Student 1"). JA 0002; JA 0009-11. The Court will refer to this interaction between Student 1 and S.R. as the "Incident." Plaintiff is S.R.'s mother.

S.R. orally reported the incident to a teacher, Ms. Holmes. JA 0072.[5] Ms. Newman, S.R.'s teacher at Eva Turner, brought the three students involved in the incident to Eva Turner's then Principal, Gary Lesko ("Mr. Lesko"). *See* JA 0014 at 8:1-13; JA 0009-11; JA 0076. According to Mr. Lesko, Ms. Newman brought three students to him, saying that two students (S.R. and a second student) were inappropriately touched by Student 1 while standing in line in the hallway. JA 0014 at 8:6-8. Mr. Lesko wrote in the "description" section of the disciplinary action form completed in response to the incident: "After 3rd grade lunch concluded, Ms. Newman brought 3 students to the office for incident in which the student touched two other students inappropriately. Camera footage does reveal that [Student 1] does tap two male students in what appears to be their private area (their backs are to the camera). The student eventually admitted that she did touch the students

[5] The document referenced was completed by Mr. Lesko at a later date (April 19, 2024), after the Incident. Throughout the JA there are references that seem to support the fact that S.R. and the second student reported the Incident first to Ms. Holmes, who then reported it to Ms. Newman. *See, e.g.*, JA 0025 at 52:5-12 & JA 0086 at 24:1-10.

inappropriately." JA 0011.

After Mr. Lesko spoke with Ms. Newman and spoke with all three students, he reviewed the video camera footage of the incident and then spoke with each of the parents of the three students. *See* JA 0014 at 9:4-10:1. This included speaking with Plaintiff, who came to the school to take S.R. home early. *See* JA 0016 at 15:15-21. Mr. Lesko also removed Student 1 from the other students and kept Student 1 in his office. JA 0014 at 8:16 – 9:7; *see also* JA 0009-11.

Mr. Lesko disciplined Student 1 because of the Incident. He kept her in his office for "a number of days," requiring that she do her work from the office and limiting her from going to class or to lunch with the other third-grade students. He also gave Student 1 a behavioral warning. JA 0009-11; JA 0026 at 54:18-55:21. The record suggests that Student 1 sat separately from S.R. upon her return to the classroom. JA 0021 at 36:12-15. Student 1 was also required to write an apology note to S.R. and the other student she touched, and she did so. *See id.*; JA 0037-38.

Mr. Lesko explained why he responded to the Incident in the way that he did: (1) he described what he saw on the video camera footage as a student tapping two other students in line, then they all got up laughing as if they were playing, and they got back in line (JA 0017 at 19:16-21); (2) he did not consider changing Student 1's schedule (so as to limit her interactions with S.R. and the other student) as a first response since Student 1 had "no priors, nothing after the fact," which gave him "no reason . . . to believe that the student was a danger to be around," and he believed having a teacher separate the students in the classroom would suffice (JA 0021 at 36:12-37:1; JA 0026 at 56:7-17); and (3) Mr. Lesko explained in an email to Plaintiff that "when dealing with younger students, [he preferred] to start with the more educational approaches (to promote change), restorative practices (offender owns actions and truly understands the impacts of his/her actions on the victim), and collaboration (bringing parents of both students together, via telephone

or CSM mediation to work together)" (JA 0052).

In the weeks and months following the Incident, Mr. Lesko communicated with Plaintiff on several occasions. *See* JA 0048-49, JA 0053-62. On March 12, 2024, Plaintiff emailed Mr. Lesko seeking, for the first time, to preserve video footage from the February 9th Incident. JA 0055. Mr. Lesko responded three days later (because he had an emergency medical issue earlier in the week) and arranged to meet with Plaintiff in person. JA 0054-55. On March 20, 2024, Plaintiff indicated that she would not be able to attend the meeting and advised Mr. Lesko that she had retained legal counsel. JA 0054. Mr. Lesko responded that if Plaintiff changed her mind, they could reschedule an in-person meeting to address her concerns. *Id*.

On March 21, 2024, Plaintiff sent an email to Charles County Public Schools ("CCPS") Superintendent Maria Navarro, with a copy to Mr. Lesko and Marvin Jones. JA 0057. In the email, Plaintiff expressed concern about the Incident and claimed that "no action [had] been taken to ensure the safety of [her] son." *Id.* She complained that her son "[continued] to attend school and [was] forced to learn in the same classroom as the perpetrator." JA 0057-58. Plaintiff requested several remedies, including the removal of Student 1 from her son's classroom. *Id*. Superintendent Navarro responded and urged Plaintiff to complete Title IX paperwork. JA 0056. Mr. Lesko also responded to the email, writing: "I would like to offer again the opportunity to schedule an in-person meeting to address your concerns and support you with completing [the Title IX] form." *Id*.

On April 3, 2024, Plaintiff emailed Mr. Lesko requesting Title IX paperwork and a time to come to school to complete the paperwork in person. JA 0061. Mr. Lesko responded, and the parties coordinated a time to meet. JA 0059-61. On April 19, 2024, Plaintiff met with Mr. Lesko to complete the Title IX paperwork. JA 0063-70; JA 0014 at 6:7-7:2. During this meeting, Plaintiff

requested that Student 1 be removed from her son's classroom. *See* JA 0020 at 30:21-31:7. Three days later, on April 22, 2024, Student 1's schedule was changed so that she was moved out of S.R.'s classroom. *See id.*; JA 0111. The "Preliminary Title IX Investigation Form" that Mr. Lesko helped Plaintiff complete on April 19, 2024, was included in a packet with other relevant documentation compiled by Mr. Lesko and provided to Keith Jones ("Mr. Jones"), CCPS Senior Internal Investigator, as part of the CCPS Title IX grievance process. JA 0063-79; JA 0082 at 8:7-9.

On June 18, 2024, Mr. Jones completed his investigation of Plaintiff's Title IX complaint. JA 0087 at 28:15-21. As part of his investigation, he spoke with Plaintiff and with the mother of Student 1. JA 0084-85 at 15:8-18:7. Mr. Jones also reviewed the packet provided to him by Mr. Lesko. JA 0083 at 11:1-5. Mr. Jones took handwritten notes from his conversations with Plaintiff and Student 1's mother. *See* JA 0089 at 34:1-35:14; JA 104-106. Mr. Jones drafted a "summary of events" documenting the information he gathered from Plaintiff and Student 1's mother, which was consistent with his handwritten notes. JA 0107-108; JA 0086-87 at 25:15-26:10; JA 0104-106. Mr. Jones reported the following, in relevant part, from Plaintiff: "[Plaintiff] said she was told by her son . . . at some point during the school day, [Student 1] touch[ed] him under his scrotum and began a fondling motion with her fingers." *See* JA 0107. Mr. Jones's notes confirm that the incident involved only "over the pants" touching. *See* JA 0104. Mr. Jones reported that Student 1's mother "advised at the onset of the interview that her child did apologize for the inappropriate touching and promised to never do it again. [She] assert[ed] that this was a one-time incident involving children at play. She contend[ed] her child ha[d] been moved from her regular classroom, and with children of that age, that should have been enough discipline." *See* JA 0107-

108.

On July 30, 2024, Charles Gammons ("Mr. Gammons"), Student Engagement and Conduct Specialist, emailed Plaintiff to inform her that her Title IX hearing was scheduled for Monday, August 12, 2024. JA 0109. On August 1, 2024, Mr. Gammons emailed Plaintiff to follow up on his earlier email, stating he "made several attempts to reach [Plaintiff], but [had] not received a response" and seeking to confirm Plaintiff's interest in moving forward with the hearing. JA 0110. Mr. Gammons indicated that if he did not hear back from Plaintiff by August 2, 2024, he would have to close the case due to lack of response. *Id*. On August 2, 2024, Mr. Gammons emailed counsel for Plaintiff to confirm an earlier call about Plaintiff's decision to cancel the hearing and instead move forward with her lawsuit. *See id.*

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves and the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations

or denials of its pleading but instead must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When faced with cross-motions for summary judgment, the Court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond, Virginia*, 475 F.3d 633, 637–38 (4th Cir. 2007) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)) (internal quotations omitted).

## III. DISCUSSION

### A. Negligence (Count One)

In its Motion, Defendant argues that it is entitled to judgment as a matter of law with respect to Plaintiff's negligence claim because no reasonable juror could find: (1) that the Incident was foreseeable, (2) that Defendant breached its duty in responding to the Incident; or (3) that Defendant proximately caused any injury to Plaintiff. *See* ECF No. 41-2 at 10-16. Plaintiff contends that the negligence claim "does not hinge on the act of sexual harassment itself and if such act was foreseeable to the Board" but rather "on injuries that stem from the psychological trauma of S.R. that occurred subsequent to the sexual molestation and the Board's failure to promptly and adequately respond." ECF No. 42-3 at 12.

The Defendant is entitled to judgment as a matter of law because Plaintiff concedes the Incident was not foreseeable and Plaintiff's negligence claim is otherwise untenable because

Defendant did not breach its duty to Plaintiff.[6]

**1. Negligence Under Maryland Law[7]**

Under Maryland law, a negligence claim requires a plaintiff to establish the following elements: (1) that a defendant had a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual loss or injury; and (4) that the loss or injury proximately resulted from the defendant's breach of its duty. *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 314 (2007) (citing *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999)). As is relevant here, Defendant's motion implicates the first and second elements of negligence: duty and breach.

A duty is "an obligation . . . to conform to a particular standard of conduct toward another." *Valentine v. On Target, Inc.*, 353 Md. 544, 550 (1999) (quoting *Prosser and Keaton on the Law of Torts*, § 30, at 356 (5th ed. 1984)). The existence of a legal duty is a question of law to be decided by the Court. *Corinaldi v. Columbia Courtyard, Inc*., 162 Md. App. 207, 218, *cert. granted*, 388 Md. 404, *appeal dismissed*, 389 Md. 124 (2005). However, if the existence of a legal duty "depends on a determination of a dispute of material fact," such a factual finding should be made by the jury. *Id.* (citation omitted).

"Although there is generally no duty to protect others from third parties' conduct, such a duty may arise in the presence of a special relationship." *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012) ("*Doe v. Prince George's County I*") (citing *Rhaney*

[6] Because the Court finds that Plaintiff cannot establish a breach of duty, it does not reach Defendant's alternative argument regarding proximate cause.

[7] Maryland adheres to the principle of *lex loci delicti* to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the Incident took place in Maryland, the law of Maryland governs Plaintiff's negligence claim.

*v. Univ. of Md. E. Shore*, 388 Md. 585, 597 (2005)). In *Doe v. Prince George's County I*, the court observed that "a special relationship exists between a school district and its students," largely because, "as a general matter, school districts assume significant responsibility for the 'welfare and guidance' of children within their purview." *Id.* (citations omitted). Further, Maryland courts have recognized "the doctrine that the relation of a school vis à vis a pupil is analogous to one who stands in loco parentis, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm." *Eisel v. Bd. of Educ. of Montgomery Cnty.*, 324 Md. 376, 384 (1991) (quoting *Lunsford v. Bd. of Educ. of Prince George's Cnty.*, 280 Md. 665, 676 (1977)) (citations omitted). The standard of care to protect students is one of reasonableness. *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 668 (D. Md. 2021).

"Schools have a special duty 'to exercise reasonable care to protect a pupil from harm.'" *J.D. v. Baltimore City Bd. of Sch. Comm'rs*, No. JMC-25-1125, 2025 WL 2653149, at *8 (D. Md. Sept. 16, 2025) (quoting *Lunsford*, 280 Md. at 676); *see also A.G. v. The Lab Sch. of Washington*, No. SAG-26-01330, 2026 WL 2408009, at *3 (D. Md. Aug. 18, 2026); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 659 (D. Md. 2013), *aff'd*, 605 F. App'x 159 (4th Cir. 2015) ("*Doe v. Prince George's County II*").

Even so, "a teacher is not an insurer of safety of students, but rather, he or she is 'held only to the standard of the reasonable care exercised by a person of ordinary prudence.'" *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 315 (2022) (citation and internal quotation marks omitted). In general, "negligence claims against teachers and administrators . . . will rise or fall on the issue of foreseeability." *Id.* To establish negligence in the context of student-on-student misconduct in a school, a plaintiff must prove "that school authorities had sufficiently specific

knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated." *Id.*

**a. The Incident Was Not Foreseeable**

Defendant cannot be held liable for the Incident under a negligence theory because the Incident was not foreseeable. The evidence of record is uncontroverted that Student 1 had no prior disciplinary issues and had done nothing to put any teacher or school administrator on notice that she might engage in misconduct toward another student. As Mr. Lesko testified, Student 1 had "no priors, nothing after the fact" and there was "no reason for [him] to believe that the student was a danger to be around." JA 0021 at 36:12-19; JA 0026 at 56:7-17. Plaintiff does not dispute that the Incident was not foreseeable.

As the Supreme Court of Maryland has recognized, "[i]njuries caused by the impulsive, unanticipated act of a fellow student ordinarily will not give rise to negligence on the part of the School District absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act." *Gambrill*, 481 Md. at 315 (internal quotation marks and citations omitted). The Incident was the result of a single, impulsive, unanticipated act of a third-grade student. No reasonable jury could find that the Incident was foreseeable to Defendant. Because the Incident was not foreseeable, Defendant did not breach any duty it owed to S.R. to protect him from Student 1.

**b. Keeping Student 1 and S.R. in the Same Classroom Was Not a Breach of Duty**

Plaintiff argues that Mr. Lesko's decision not to change Student 1's schedule so that she was not in S.R.'s classroom was negligent. *See* ECF No. 42-3 at 8-13. In other words, Plaintiff argues that even if the Incident itself was not foreseeable, Defendant breached its duty to S.R. by continuing to subject him to Student 1's physical presence after the Incident had occurred. Plaintiff

reasons that the "temporary remedial measures" taken by the Board were insufficient and that Defendant's failure to immediately remove Student 1 from S.R.'s classroom was a breach of the duty it owed to him. *Id.* at 9.

There is no dispute that, after the Incident, Student 1 did not engage in any misconduct toward S.R. or other students. And there is no dispute that Defendant imposed immediate disciplinary action on Student 1 after the Incident. What is in dispute is whether the disciplinary measures were sufficient to protect S.R. from harm. No reasonable jury could find that Defendant breached any duty by failing to permanently remove Student 1 from S.R.'s classroom immediately after the Incident.

For very sound reason, courts refuse to dictate the day-to-day student disciplinary decisions of school administrators. *Cf. Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (stating that "courts should refrain from second guessing the disciplinary decisions made by school administrators"). In evaluating Plaintiff's classroom-placement negligence theory, the Court's only role is to determine whether Defendant failed to act with the "reasonable care exercised by a person of ordinary prudence" to prevent S.R. from being harmed by Student 1. *See, e.g.*, *Gambrill*, 481 Md. at 315 (quoting *Segerman v. Jones*, 256 Md. 109, 125 (1969)).

The Court notes that Defendant took prompt action in response to the Incident. In assessing the reasonableness of Defendant's actions after the Incident, the Court considers the nature of the Incident (an over-the-clothes touching of one student by another student), the age of the students involved (both students were in the third grade), the disciplinary history of the offender (Student 1 had no disciplinary history), and the offending student's response (Student 1 was remorseful and did not engage in similar misconduct again).

Defendant acted reasonably as a matter of law. There is no evidence from which a

reasonable jury could conclude that reasonable care required Defendant to permanently and immediately remove Student 1 from S.R.'s classroom. The Incident was brief in duration, was not repeated, and occurred among very young students in the same grade. Defendant immediately investigated the Incident, notified the parents of the students who were involved, and imposed discipline on Student 1 (including eventually permanently removing her from S.R.'s classroom). While the absence of any recurrence in misbehavior by Student 1 is not dispositive, it is consistent with the undisputed evidence that the corrective measures that Defendant took effectively addressed the conduct that gave rise to the risk of harm to S.R.

And even assuming that Defendant knew or should have known that S.R. remained distressed while in the same classroom as Student 1, this would not establish a breach of duty under Maryland law. The relevant inquiry is whether an objectively reasonable school administrator would have concluded that keeping Student 1 and S.R. in the same classroom presented a sufficiently foreseeable risk of injury to S.R. such that reasonable care required the students to be separated.[8] S.R. may have been afraid of Student 1, but there is no evidence that Student 1 engaged in any conduct after the Incident that reflected that she remained an ongoing threat. Specifically, there is no evidence that Student 1 in any way threatened, harassed, touched, or teased S.R. after the Incident. S.R.'s claimed emotional distress after the Incident did not give rise to a duty on the part of Defendant to move Student 1 to a different classroom. No reasonable

---

[8] Plaintiff argues that Defendant violated its own Sexual Harassment/Title IX policy. ECF No. 45 at 4. While violations of administrative procedures may be probative of negligence, the Maryland Supreme Court has cautioned against overreliance on administrative procedures as a source of substantive duties. *Compare Volkswagen of Am. v. Young*, 272 Md. 201, 218 (1974) ("[S]tatutory or regulatory requirements are deemed to furnish standards by which courts or juries determine, along with other circumstances, whether or not conduct is negligent."), *with Massey v. Sec'y, Dep't of Pub. Safety and Corr. Servs.*, 389 Md. 496, 519 (2005) (citations and internal quotation marks omitted) ("[T]o carry the procedural rule-making requirements too far into the internal workings of the agency would completely stifle agency activities if it were enforced.").

jury could find that Defendant failed to exercise ordinary care to protect S.R. from Student 1 after the Incident. *See, e.g.*, *Doe v. Prince George's County II*, 982 F. Supp. 2d at 659 (holding that "no reasonable juror could conclude that Defendants failed to exercise ordinary care to protect [plaintiff] from [the student perpetrator's] harassment" because "Defendants took swift and substantial action in response to the [alleged incidents]").

Student 1 was a third-grade student with no disciplinary history. She expressed remorse about her conduct and promised to never do it again. The Court is not in a position to second-guess the school's judgment regarding the adequacy of the disciplinary measures imposed on Student 1. By subjecting Student 1 to in-school retention/in-school intervention (essentially an in-school suspension), a loss of privileges,[9] and a behavioral warning, as well as the requirement that she write an apology note to S.R. and the other student, Defendant imposed discipline tailored to the conduct and the age of Student 1. Additionally, Defendant permanently removed Student 1 from S.R.'s classroom on April 22, 2024. "[An official's] conduct should be judged not by hindsight but should be viewed in light of how a reasonably prudent [official] would respond faced with the same difficult ... situation." *Doe v. Prince George's County II*, 982 F. Supp. 2d at 659 (quoting *Boyer v. State*, 323 Md. 558, 589 (1991)).

And to the extent that Plaintiff's theory is one of educational malpractice, or that Defendant negligently deprived S.R. of the right to a fair education because of its decision to keep him in the same classroom with Student 1, such a theory is foreclosed under Maryland law. Maryland does not recognize negligence claims for educational malpractice challenging the quality of education

[9] Defendant, through Mr. Lesko, placed Student 1 in the principal's office for "a number of days" where she did her work from the office and did not go to class. JA 0026 at 55:11. Student 1 also did not participate in lunchtime with other students. *Id.* at 55:13. The record indicates that Student 1 faced these disciplinary actions from Friday, February 9, 2024, to Monday, February 12, 2024. JA 0011; JA 0071.

provided by an educational institution. *See Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 374–75 (D. Md. 2022); *Hunter v. Bd. of Educ. of Montgomery Cnty.*, 292 Md. 481, 484 (1982) (explaining that "a cause of action seeking damages for acts of negligence in the educational process is precluded by considerations of public policy, among them being the absence of a workable rule of care against which the defendant's conduct may be measured, the inherent uncertainty in determining the cause and nature of any damages, and the extreme burden which would be imposed on the already strained resources of the public school system to say nothing of those of the judiciary"). While the educational malpractice doctrine does not bar traditional negligence claims arising in the school setting, neither does it create an additional avenue for Plaintiff to obtain relief under the circumstances of this case. *See Heward v. Bd. of Educ. of Anne Arundel Cnty.*, No. ELH-23-0195, 2023 WL 6381498, at *57 (D. Md. Sept. 29, 2023).

For all of these reasons, Defendant is entitled to judgment as a matter of law on Plaintiff's negligence claim (Count One).

**B. Respondeat Superior (Count Two)**

Defendant moves for summary judgment on Plaintiff's claim for "respondeat superior" (Count Two) because it is not a stand-alone cause of action. Plaintiff does not dispute this point. *See* ECF Nos. 42, 44, 45. "Respondeat superior is not an independent cause of action, nor a cognizable legal claim." *Olson v. A.R.T. Inst. of Washington, Inc.*, No. PX-24-437, 2025 WL 1809796, at *3 (D. Md. June 30, 2025) (citing *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 601 (D. Md. 2013) ("[R]espondeat superior is not a separate cause of action"); *Alford v. Genesis Healthcare*, No. RDB-05-3278, 2007 WL 1073725, at *4 (D. Md. Apr. 9, 2007) (same)).

Because Plaintiff's claim for respondeat superior is not a valid cause of action, the Court

will grant summary judgment in Defendant's favor on Count Two.

**C. Sexual Harassment and Sex Discrimination under Title IX (Count Three)**

Defendant argues that it is entitled to summary judgment with respect to Plaintiff's Title IX claim because the Incident was not sufficiently severe, pervasive, and objectively offensive to constitute actionable sexual harassment under Title IX. *See* ECF No. 41-2 at 17-21. Additionally, Defendant argues that it is also entitled to summary judgment because Plaintiff cannot establish that the Board acted with deliberate indifference under Title IX. *See id.* at 21-25.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," subject to certain exceptions that do not apply here. 20 U.S.C. § 1681(a). The Supreme Court has held that for purposes of Title IX, unlawful sex discrimination includes sexual harassment and sexual assault. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281-82 (1998); *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992). And relevant to this matter, "student-on-student sexual harassment, if sufficiently severe, can . . . rise to the level of discrimination actionable under [Title IX]." *Davis*, 526 U.S. at 650.

To prevail on a Title IX claim based on student-on-student sexual harassment, a plaintiff must establish that: (1) they were a student at an educational institution receiving federal funds; (2) they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school; (3) the school, through an official who had authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment. *Willey v. Bd. of Educ. of*

*St. Mary's Cnty.*, 557 F. Supp. 3d 645, 659 (D. Md. 2021) (citing *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021) ("*Doe v. Fairfax*") (citations omitted)).

There is no dispute that the first and third elements of Plaintiff's Title IX claim (institution receiving federal funds and official notice) are satisfied. But Plaintiff is unable to meet the remaining elements of this claim: actionable harassment and deliberate indifference.

**1. The Harassment Was Not Sufficiently Severe, Pervasive, and Objectively Offensive**

The evidence does not support a finding of sexual harassment that was so severe, pervasive, and objectively offensive that it deprived S.R. of educational opportunities or benefits.[10] In *Doe v. Fairfax*, the Fourth Circuit held that a plaintiff must prove that the sexual harassment in question was severe, pervasive, *and* objectively offensive, in the conjunctive sense, to prevail on a student-on-student sexual harassment claim under Title IX. 1 F.4th at 263-64 n.6. At the same time, the court noted that a single incident, if extremely serious, may be sufficient to provide a basis for Title IX liability. *Id.* at 276 n.17. The Fourth Circuit has explained that a victim of sexual harassment "can be said" to have been deprived of access to educational opportunities or benefits in several circumstances, including when the harassment (1) results in the physical exclusion of the victim from an educational program or activity; (2) "so undermines and detracts from the victim['s] educational experience" as to "effectively den[y her] equal access to an institution's resources and opportunities"; or (3) has "a concrete, negative effect on [the victim's] ability" to participate in an educational program or activity. *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 699 (4th Cir. 2007) (quoting *Davis,* 526 U.S. at 650-51, 654).

[10] The Court declines to address Defendant's alternative argument that there is no evidence that Student 1 touched S.R. because of S.R.'s sex.

First, the Incident was a single, isolated event. Student 1 did not repeat the misconduct after the Incident. Student 1's misconduct toward S.R. was not "pervasive"; it only happened once. And it was not so "extremely serious" as to provide a basis for Title IX liability under the single-incident exception carved out in *Doe v. Fairfax*, 1 F.4th at 276 n.17. *See Manfredi v. Mount Vernon Bd. of Educ.*, 94 F. Supp. 2d 447, 455 (S.D.N.Y. 2000) (explaining that "while a single instance of one-on-one peer sexual harassment might, in some circumstances, have the effect of denying the victim equal access to education, it was 'unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment'") (quoting *Davis*, 526 U.S. at 653).

Courts applying the "severe, pervasive, and objectively offensive" standard have generally declined to find actionable harassment based on isolated incidents of conduct comparable to what happened here. *See, e.g.*, *Francoeur v. D.L.*, No. 3:15CV953 (JBA), 2017 WL 4247385, at *6-7 (D. Conn. Sept. 25, 2017) (concluding that a one-time incident involving a student being grabbed several times on the buttocks, although "undoubtedly embarrassing, degrading, and offensive," was neither pervasive nor sufficiently severe to implicate the plaintiff's Title IX rights); *Manfredi*, 94 F. Supp. 2d at 454 (S.D.N.Y. 2000) (expressing doubt about whether an incident involving two seven-year-olds and an over-the-clothing touching where one student "stuck his hand between [the] legs" of another student was actionable under Title IX); *AA by BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 511 (W.D.N.Y. 2021) ("[O]ver-the-clothes touching and sexual comments – does not, as a matter of law, arise to the level of 'severe and pervasive' harassment for which Title IX liability can attach to a one-time incident."); *see also* ECF No. 41-2 at 19-20

(collecting cases involving isolated and less severe conduct that did not satisfy the *Davis* standard). No reasonable jury could find this standard to have been met in this case.

Second, S.R. was not denied equal access to his educational environment. There is evidence that S.R. did not feel safe being in the same classroom as Student 1 after the Incident because he was concerned a similar situation might happen again. *See* ECF No. 42-3 at 24; *see also* JA 0137 at 43:5–13. But the record does not establish that Defendant's response denied S.R. access to an educational opportunity or benefit within the meaning of *Davis*. Defendant repeatedly attempted to bring Plaintiff into Eva Turner to discuss the Incident and the school's response, but Plaintiff declined those invitations. Moreover, the alleged harassment did not happen again after Defendant addressed the Incident. Thus, even assuming for purposes of argument that the Incident may properly be characterized as actionable harassment, the absence of any subsequent harassment weighs against a finding that the conduct or Defendant's response effectively deprived S.R. of access to an educational opportunity or benefit.

*Soriano ex rel. Garcia v. Bd. of Educ. of City of New York* is instructive. No. 01 CV 4961(JG), 2004 WL 2397610 (E.D.N.Y. Oct. 27, 2004). There, the court found no denial of access to the school's resources and benefits despite evidence that a student was harassed, which caused them to have nightmares, to get worse grades, and to need therapy. *Id.* at *1–2. The harassment in question consisted of two discrete encounters, one involving a student touching the plaintiff's vagina through her skirt and another involving a slap on her buttocks. *Id.* The court nevertheless concluded that the conduct was not actionable under Title IX because it did not satisfy the applicable *Davis* standard. *Id.* at *5-6. The circumstances here are likewise insufficient to establish the requisite denial of access to an educational opportunity or benefit.

**2. Deliberate Indifference to the Harassment**

Defendant was not deliberately indifferent to Student 1's misconduct. "Under Title IX, a school acts with deliberate indifference where its response to the alleged harassment or the lack of any such response is clearly unreasonable in light of the known circumstances." *Doe v. Fairfax*, 1 F.4th at 271 (quoting *Davis*, 526 U.S. at 648 (cleaned up)). "This is not a mere 'reasonableness' standard," but a "high standard" that imposes liability only when a school's own deliberate indifference effectively "caused the discrimination." *Davis*, 526 U.S. at 642-43, 649 (internal edits omitted); *see also Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016) (holding that *Davis*'s deliberate indifference standard "sets a high bar for plaintiffs to recover under Title IX").

Schools are not required to "purg[e] their schools of actionable peer harassment," *Davis*, 526 U.S. at 648, and the standard "is sufficiently flexible to account both for the level of disciplinary authority available to the school and for the potential liability arising from certain forms of disciplinary action." *Id.* at 649. "That is not to say […] that only a complete failure to act can constitute deliberate indifference, or that any half-hearted investigation or remedial action will suffice to shield a school from liability." *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016). Where, for instance, a school has knowledge that a series of "verbal reprimands" is leaving student-on-student harassment unchecked, then its failure to do more may amount to deliberate indifference under *Davis. Patterson v. Hudson Area Schs.,* 551 F.3d 438, 448–49 (6th Cir. 2009); *see also Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 669–70 (2d Cir. 2012) (school response to student-on-student harassment may be unreasonable where school "dragged its feet" before implementing "little more than half-hearted measures"). But school administrators are entitled to substantial deference when they calibrate a disciplinary response to

student-on-student bullying or harassment, *see Davis,* 526 U.S. at 648; *Est. of Lance v. Lewisville Indep. Sch. Dist.,* 743 F.3d 982, 996-97 (5th Cir. 2014). A school's actions do not become "clearly unreasonable" simply because a victim or his parents advocated for stronger remedial measures. *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 666 (2d Cir. 2012).

Defendant's response to the Incident was not unreasonable and no reasonable jury could find otherwise. Defendant became aware of the Incident immediately after it happened. All three students involved in the Incident were taken to Mr. Lesko's office after their lunch concluded. Defendant acted swiftly to ensure the safety of S.R. and to discipline Student 1 (as appropriate for a third grader). Defendant investigated the Incident, interviewing all participants and notifying their parents about what had happened. Defendant took steps to ensure that the Incident would not be repeated. And the Incident was not repeated; the measures that Defendant took in response to the Incident were successful. Defendant was not required, as Plaintiff demanded, to move Student 1 into a different classroom from S.R.

*Doe v. Prince George's County II* is instructive. 982 F. Supp. 2d at 657. There, the court rejected an argument materially similar to Plaintiff's: that the school demonstrated deliberate indifference by failing to transfer the alleged harasser to a different class. *Id.* The court explained that such an argument would improperly require the court to "micromanage" the school's response. *Id.* As the court recognized, Title IX plaintiffs do not possess a "right to make particular remedial demands." *Id.* (quoting *Davis*, 526 U.S. at 648). This concept underscores the recognition that courts lack the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy." *Id.* (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley,* 458 U.S. 176, 208 (1982) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 42 (1973)). Consistent with that principle, the Fourth Circuit has

recognized that schools retain "a great deal of 'flexibility' in disciplining students who sexually harass other[s]." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018) (quoting *Davis*, 526 U.S. at 648).

The court in *Doe v. Prince George's County II* concluded that "no reasonable juror could conclude that Defendants were deliberately indifferent by not moving Classmate or [minor victim] to another classroom." 982 F. Supp. 2d at 657. The same reasoning applies here. Defendant was not required to implement the particular remedial measures that Plaintiff requested, and its failure to do so was not clearly unreasonable in light of the known circumstances.[11]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 41) is **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment (ECF Nos. 42 & 44) is **DENIED**. Summary judgment is entered in favor of Defendant on all claims.

A separate Order will follow.

Date: September 23, 2026

/s/
The Honorable Timothy J. Sullivan
Chief United States Magistrate Judge

[11] Plaintiff also points to alleged procedural deficiencies in Defendant's Title IX process. But even if these deficiencies occurred, a school's failure to strictly comply with its internal Title IX procedures does not itself establish deliberate indifference. The relevant inquiry is whether the school's response, taken as a whole, was clearly unreasonable in light of the circumstances known to the school. As explained above, Defendant's response to the Incident was not clearly unreasonable.